IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA L. HUNTER, : | |
| : | Civil No. 4:08-cv-1270 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| STOUFFER EQUIPMENT : | Judge John E. Jones III |
| COMPANY, and SCOTT STOUFFER, : | |
| : | |
| Defendants. : | |

# MEMORANDUM

## September 14, 2009

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Currently pending before the Court is Defendant Stouffer Equipment Company's Motion for Summary Judgment (Rec. Doc. 27) (the "Motion"). For the reasons stated below, the Motion shall be granted in its entirety.

**PROCEDURAL HISTORY**:

Plaintiff Sandra L. Hunter ("Plaintiff" or "Hunter") initiated the above-captioned case by filing a two-count complaint on July 3, 2008 against Stouffer Equipment Company ("SEC") and Scott Stouffer ("Stouffer"), the principal shareholder of SEC. (Rec. Doc. 1). In Count I, Plaintiff asserts violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (1991) ("Title

1

VII"). In Count II, Plaintiff asserts violations of the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (1961) ("PHRA"). (Id.). A liberal reading of the complaint leads us to the conclusion that both Counts I and II are grounded in the adverse employment actions allegedly suffered by Plaintiff (i.e. denial of health care benefits and employment termination) and the allegedly hostile work environment created by Stouffer. (Id.).

Defendants filed the instant Motion, and a brief in support thereof, on January 30, 2009. (Rec. Docs. 27, 28). Plaintiff's brief in opposition was lodged on February 23 2009, (Rec. Doc. 32), and Defendants countered with their reply brief on March 9, 2009, (Rec. Doc. 34). Consequently, the instant Motion has been fully briefed and is therefore ripe for disposition.

**STANDARDS OF REVIEW:**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325. Once the

moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement

about the facts or the proper inferences that a fact finder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." Anderson, 477 U.S. at 247-48.

**STATEMENT OF MATERIAL FACT**:

Plaintiff, a female, began her employment with Defendants as a secretary on or about October 3, 2005. (Rec. Docs. 29, 32-7 ¶ 4).[1] Stouffer has testified that at the time of Plaintiff's hire, SEC's policy regarding medical coverage stated that same would be discussed after the first 90 days of work and would be contingent upon an employee's work performance during that period. Stouffer Dep. 32:11-14. Stouffer further testified that the Employee Handbook (the "Handbook"), which contained that information, was not in effect during Plaintiff's employment.

---

[1] Prior to her hire, Plaintiff submitted to SEC a resume that indicated she studied Accounting at the University of Miami between 1982 and 1987. (Rec. Docs. 29, 32-7 ¶ 13). Stouffer later discovered information indicating that the University of Miami had no record of attendance for Plaintiff. Scott Stouffer Dep. 27:3-12, November 12, 2008. However, Stouffer did not come across this information until after Plaintiff was separated from her employment with SEC. Id. 27:13-15. Plaintiff counters that she attended the University of Miami under the name "Sandra Ziegler" and that the University could not locate her because they searched for her under her current name, "Sandra Hunter." (See Rec. Doc. 32-7 Ex. B p. 35).

4

Stouffer Dep. 31:15-32:10.[2] Nonetheless, Plaintiff testified that she received the Handbook at the time of her employment and was under the impression that she would automatically receive medical coverage after her first 90 days, free from ay contingencies. Sandra Hunter Dep. 20:4-21:20, November 12, 2008.

At her 90-day review, Stouffer allegedly informed Plaintiff that she would not be receiving medical benefits due to her inadequate job performance. Stouffer Dep. 42:9-13.[3] At this meeting, Stouffer allegedly informed Plaintiff that she would be reviewed again after the next 90-day increment. (Rec. Doc. 29 ¶ 18). During the week of June 12, 2006, Stouffer reevaluated Plaintiff and determined that she would not be receiving medical benefits because her job performance remained unsatisfactory. Stouffer Dep. 42:9-13.[4] Stouffer avers that at this time he informed Plaintiff that she should seek alternative employment and that SEC would not "cut-off" her paycheck in the meantime. Id. 42:19-43:15.[5]

---

[2] Plaintiff contends that the Handbook does not establish a "policy" regarding medical coverage, as it contains the following statement: A co-worker shall become a member of the SEC team upon satisfactory completion of his or her training and evaluation period, the first 90 days after the date the co-worker begins will be the first evaluation." A further provision, found under the heading "Fringe Benefits" and the sub-heading "90 days" states, "Medical coverage as discussed at the time of your 90-day evaluation by the owner and supervisor . . . ." (See Rec. Doc. 32-10).

[3] Plaintiff alleges that the 90-day review never took place. Hunter Dep. 23:1-9.

[4] Plaintiff also testified that Stouffer never, at any point in time, informed her that her performance was unsatisfactory. Id. 23:10-13.

[5] Plaintiff disputes this contention. Id. 25:13-17.

On June 20, 2006 Plaintiff suffered a heart attack. Hunter Dep. 30:16-20.[6] On that day, Stouffer avers that Plaintiff's then-fiancee Jonathan Stoltzfus ("Stoltzfus") contacted him and advised that Plaintiff would not be returning to work, demanded medical benefit for her, and requested that those benefits be backdated to January 1, 2006. (Rec. Doc. 29 ¶ 35).[7] Stouffer refused to institute benefits at that time. (Rec. Doc. 29 ¶ 36). On June 26, 2006 Plaintiff contacted SEC and was informed that her final paycheck was available and was asked to return her keys. Stouffer Dep. 52:1-18. During this conversation, Plaintiff avers that Stouffer informed her that her services were no longer needed. Hunter Dep. 33:3-12. After her separation from employment, Plaintiff filed a worker's compensation petition, which was ultimately settled for a lump sum of $10,000.

**DISCUSSION**:

To recapitulate, the instant suit involves Title VII and PHRA claims

---

[6] Plaintiff avers that her heart attack was the result of the harassment she suffered at the hands of Stouffer at the SEC office earlier that day. (Rec. Doc. 32-7 ¶ 29). Stouffer counters that he was not even in the office or on SEC property during business hours on June 20, 2006. Stouffer Dep. 44:8-14.

Plaintiff further indicates that the harassment she experienced on the day of her heart attack was a common occurrence. Specifically, Plaintiff asserts that Stouffer often called her a "bitch," said that women were good for nothing but "being barefoot and pregnant," called her "an asshole of a brain," and told her that her college degree "was a piece of shit."

[7] Stoltzfus testified that he informed SEC that Plaintiff would not return to work *that day* (i.e. the day of her heart attack). Worker's Comp. Hr'g Tr. 16, May 14, 2007. Plaintiff contends that she never voluntarily terminated her employment with SEC. Hunter Dep. 32:13-15.

sounding in adverse employment action and hostile work environment allegations. We will address these issues *seriatim*.

### A. Title VII Claims

Title VII makes it unlawful for an employer to, *inter alia*, "discriminate against any [employee] with respect to . . . sex." 42 U.S.C. § 2000e-2(a)(1). The term "employer" means:

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5 or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501© of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S. C. § 2000e(b). Defendants aver that SEC does not qualify as an "employer," and therefore is not bound by the dictates of Title VII, because it did not employ 15 or more employees during the time period relevant to the instant case.[8] Defendants support this contention by identifying Stouffer's affidavit

---

[8] Since the statute stresses that an employer must have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," the salient period would be 2006 (the year in which her causes of action accrued) and 2005, the preceding year.

testimony in which he stated that SEC employed no more than 12 individuals in 2005, the year in which Plaintiff was hired, no more than 14 individuals in 2006, no more than 13 individuals in 2007, and no more than 12 individuals in 2008. Stouffer Aff.¶¶ 10, 12, 14, 16, January 23, 2009.

Plaintiff counters this assertion by noting that during Stouffer's deposition, he did not know the identities of the part-time people he employed. Stouffer Dep. 13:13-24. Further, she notes that in response to discovery requests, Defendant submitted a list of people employed by SEC since December 1, 2000. (See Rec. Doc. 29, Ex. 16) (the "Employment List"). There are 33 individuals, including Plaintiff, listed in that document along with employment information relative to each individual.[9] From this document, Plaintiff contends that a reasonable jury could conclude that SEC employed 15 or more employees during the relevant time period. We disagree.

There are termination dates for only 8 of the 33 individuals listed. One of those individuals began employment with SEC after Plaintiff's separation. The other 7 individuals are the only employees that clearly began their employment before or during Plaintiff's tenure and were separated from their employment

---

[9] This information included the each employee's sex, date of hire, employment status (i.e. full or part time), date that medical insurance was provided, the reason why medical insurance was not provided (if applicable), and the date of separation from employment (if applicable).

during or after Plaintiff's tenure. These 7 individuals count towards the 15 requisite employees needed to qualify SEC as an "employer" under Title VII. Regarding the 25 individuals for which no date of separation was provided, the "Date of Separation (if applicable)" box is left blank in the case of 8 of them. From this, a reasonable person can assume that those individuals were working for SEC at the time that the list was created. Of these individuals, 5 began their employment after Plaintiff's tenure at SEC. Accordingly, only the 3 remaining individuals began their employment at SEC either before or during Plaintiff's tenure and can be counted toward the aforementioned 15 employees. Thus, a reasonable person at this point in our analysis could infer that 10 individuals were employed by SEC at some point during Plaintiff's tenure.

For 17 individuals, the "Date of Separation (if applicable)" box was completed with a question mark. Such denotation would obviously lead a reasonable person to conclude that those 17 individuals were separated from employment on a date that was uncertain or could not be identified. Notably, there is no evidence that could lead a reasonable person to conclude that these individuals were employed during Plaintiff's tenure at SEC.[10] Such a conclusion

---

[10] As the non-moving party, Plaintiff "must make a showing sufficient to establish the existence of [every] element essential to [its] case . . . ." Serbin v. Bora Corp., 96 F.3d 66, 69 n.2 (3d Cir. 1996). It is not the Court's responsibility to dredge through record evidence to find

would be purely based in speculation and conjecture, and it is well-established that speculation and conjecture cannot defeat a summary judgment motion. See Acumed LLC v. Advanced Surgical Servs. Inc., 561 F.3d 199, 228 (3d Cir. 2009) (citing Lexington Ins. Co. v. Western Pa. Hosp., 423 F.3d 318, 332-33 (3d Cir. 2005)). Having been provided with the aforesaid 17 names, Plaintiff could have made further inquiries to attempt ascertain their precise leaving dates. Plaintiff did not do so. Therefore, it is our determination that the Plaintiff's Title VII claims must be dismissed because she has failed to establish that SEC was an "employer," as defined by Title VII. The instant Motion will be granted to this extent.[11]

## B. PHRA Claims

As a preliminary matter, we note that Defendants have reminded us of our ability to dismiss Plaintiff's PHRA claims for lack of subject matter jurisdiction, as

---

questions of material fact. Doebler's Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 (3d. Cir 2006) ("Judges are not like pigs, hunting for truffles buried in the record.") (citations omitted).

     Plaintiff's reliance on Stouffer's inability to identify all his part-time workers does not advance her position because it does not educate us as to the number of individuals employed by SEC. Plaintiff makes an unreasonable leap in logic when she assumes that Stouffer's inability to remember the names of his part-time employees necessarily indicates that the quantity of those employees is numerous. Further, Stouffer's forgetfulness does not establish the time frame during which the part-time employees in question worked at SEC, a fact that is necessary to the instant determination.

     [11] Even if Plaintiff had successfully adduced evidence that established SEC as an "employer" pursuant to Title VII, her Title VII claims would be dismissed for the substantive reasons recounted below.

we have already dismissed the only federal claims asserted in the case *sub judice*. However, we note that we have the *discretion* to do so; we are not *required* to do so. As the parties are aware, discovery is complete and the case is scheduled for trial. Accordingly, we think it in the interest of judicial economy and fairness to retain jurisdiction over the pendant state claims. See Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1285 (3d Cir. 1993) (In deciding whether to retain jurisdiction of a pendent state law claim following dismissal of federal claims, the district court should consider generally accepted principles of judicial economy, convenience, and fairness to the litigants.). Consequently, we decline the invitation to dismiss Plaintiff's PHRA claims on the basis of subject matter jurisdiction alone.

> The PHRA makes it illegal:
>
> for any employer because of the . . . sex . . . of any individual . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955.

When a plaintiff alleges both a Title VII and PHRA claim, both claims are subject to the same Title VII analysis. Weston v. Pennsylvania, 251, F.3d 420, 426

n.3 (3d Cir.2001). Accordingly, we will analyze Plaintiff's adverse employment and hostile work environment PHRA claims under Title VII standards.

In resolving adverse employment claims, courts utilize the three step burden-shifting approach enunciated in McDonnell Douglas v. Green, 411 U.S. 792 (1973). The first step requires that the Plaintiff produce evidence from which a *prima facie* case of age discrimination can be inferred. The *prima facie* case requires proof that (i) the Plaintiff was a member of a protected class (i.e. a female); (ii) the Plaintiff suffered an adverse employment action; (iii) the Plaintiff was qualified for the job or for the benefit; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination. Samuels v. Postmaster Gen., 257 Fed. Appx. 585, 586 (3d Cir. 2007). The second step requires that the Defendants produce evidence that is sufficient to support a finding that they had a legitimate, non-discriminatory reason for their employment decision. Id. at 587 (citations omitted). If the Defendants cannot carry their burden of production, judgment must be entered for the Plaintiff. See id. (citations omitted). However, if the Defendants carry the burden of production, we proceed to the third step, which requires the Plaintiff to produce evidence from which "a fact finder could reasonably either (I) disbelieve the Defendant[s'] articulated

legitimate reasons;[12] or (ii) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the Defendants' action."[13] Tice v. Bristol-Myers Squibb Co., 325 Fed. Appx. 114, 116 (2009) (citations omitted).

For the purposes of the instant analysis, we will assume *arguendo* that Plaintiff could establish a *prima facie* case of sex discrimination, an assumption about which we nonetheless have serious doubts. However, were she to carry her burden with regard to her *prima facie* case, Defendants would be tasked with identifying a legitimate, non-discriminatory reason for denying Plaintiff medical coverage and for terminating her employment.[14] Defendants have adequately

---

[12] In interpreting this language, the Third Circuit Court of Appeals has said, "[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer . . . . Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

[13] Pursuant to this language, a plaintiff must prove discrimination "in the same way that critical facts are generally proved-based solely on the natural probative force of the evidence." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (internal citations omitted) (addressing the Age Discrimination in Employment Act); see Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003) (employing the same analysis for Title VII and Age Discrimination in Employment Act claims).

[14] We realize that Defendants dispute the contention that Plaintiff was terminated, arguing instead that she voluntarily quit subsequent to her heart attack. However, Plaintiff has adduced evidence that she did not voluntarily relinquish her position at SEC, and so, construing the facts in the light most favorable to her, as we must, we will assume for the purposes of resolving the instant Motion that she was in fact terminated.

carried this burden, alleging that Plaintiff was denied medical coverage and ultimately separated from her employment due to her unsatisfactory job performance.[15] Accordingly, the burden shifts back to the Plaintiff to prove that Defendants' legitimate, non-discriminatory reasons for denying her medical coverage and terminating her are were pretexts concealing discriminatory animus. Simply stated, Plaintiff has not carried this burden.

In attempting to cast doubt upon Defendants' legitimate, non-discriminatory reason, Plaintiff notes that her testimony directly contradicts the Defendants' assertions relating to her poor performance, which she contends are not supported by documentary evidence. However, it is clear from the Employment List that of the six women who worked for SEC since December 2001, five of them were offered medical coverage.[16] (Rec. Doc. 29 Ex. 16). The only female not offered medical coverage was Plaintiff. (Id.). Further, it is clear from the deposition testimony that Alicia Keck, a female, was hired on August 8, 2006 to replace Plaintiff as SEC Office Manager. (See id.); see also Stouffer Dep. 20:17-23;

---

[15] In his deposition, Stouffer testified that Plaintiff would incorrectly transcribe documents, which consequently forced him to expend his time and energy in personally reviewing all transcriptions assigned to her before she disbursed them to clients. Stouffer Dep. 26:9-15. Plaintiff notes that there is no documentary evidence that corroborates her poor performance; however, in rebutting Plaintiff's *prima facie* case, such evidence is not required. All Defendants need to do is *articulate* a non-discriminatory reason. They have done so.

[16] Of these 5 individuals, 3 accepted the coverage and 2 denied the same. (Rec. Doc. 29 Ex. 16).

Hunter Dep. 14:8-13.[17] This is powerful, probative evidence supporting Defendants' legitimate, non-discriminatory reason for denying Plaintiff medical coverage and ultimately separating her from her employment at SEC. Plaintiff has simply failed to adduce evidence that exploits weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the Defendants' legitimate, non-discriminatory reason.[18] Accordingly, we will dismiss the Plaintiff's PHRA claim insofar as it is based on the alleged adverse employment consequences. We will grant the instant Motion to this extent, and proceed to Plaintiff's hostile work environment claim.

"To establish a prima facie hostile work environment claim, a plaintiff must

---

[17] Additionally, there is evidence indicating that a male employee, Jeff Mumma, who was not immediately provided with medical coverage at the beginning of his employment with SEC, was confronted about his inadequate job performance. (Rec. Doc. 29 Ex. 16); see Stouffer Dep. 32:19-25. Similar to the instant case, Stouffer advised him to seek other employment. Stouffer Dep. 33:8-18. Mumma ultimately resigned prior to his first 90-day period and therefore did not receive medical benefits. (Rec. Doc. 29 Ex. 16); see Stouffer Dep. 32:19-25.

[18] While Plaintiff's deposition testimony contests Defendants' assertion that her job performance was inadequate, these averments can only cast doubt upon the Defendants' assertion that her job performance was the reason it took adverse employment actions against her. Plaintiff simply has not provided us with evidence indicating that similarly situated male employees were not denied medical coverage and were not separated from their employment with SEC or that similarly situated females were either not hired, consistently terminated, or not offered medical coverage. To the contrary, the record evidence before us indicates quite the opposite. Males *were not* offered immediate medical coverage and *were* confronted about poor job performance and ultimately separated from their employment. Females *were* hired, retained and offered medical coverage. Consequently, Plaintiff has failed to adduce evidence that supports her contention that the Defendants legitimate, non-discriminatory reasons were a pretext to conceal sex-based discriminatory animus.

15

establish five elements: (i) that she suffered intentional discrimination because of her sex; (ii) that the discrimination was severe or pervasive;[19] (iii) that the discrimination detrimentally affected her; (iv) that the discrimination would detrimentally affect a reasonable person in like circumstances; and (v) that a basis for employer liability is present." Theriault v. Dollar General, 2009 WL 1922199 *1 (3d Cir. 2009) (citations omitted).

In support of this claim, Plaintiff has testified that Stouffer often called her a "bitch," said that women were good for nothing but "being barefoot and pregnant," called her "an asshole of a brain," told her that her college degree "was a piece of shit," and that she "wasn't worth a damn." Hunter Dep. 29:2- 30:7. While some of these comments are undoubtedly sex-based, "workplace harassment is not automatically sex discrimination because 'the words used have sexual content or connotations.'" Connell v. Nicholson, 318 Fed. Appx. 75, 77 (3d Cir. 2009) (quoting Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Pursuant to Title VII, and by extension the PHRA, "'the critical issue . . . is

---

[19] In determining whether the comments were "severe" or "pervasive," courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).

16

whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" Connell, 318 Fed. Appx. at 77 (quoting Oncale, 523 U.S. at 80 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J, *concurring*))). In determining this, we must consider the totality of the circumstances. Faragher, 524 U.S. at 787-88.

While the conduct which Plaintiff attributes to Stouffer is distasteful and offensive, Plaintiff simply has not identified any evidence from which we can conclude that male employees were not subjected to similar treatment. In fact, at her deposition, Plaintiff testified as follows:

> Q: . . . [W]hat is the pervasive harassment you are talking about?
> A: If [Stouffer] was in a bad mood, everybody in the office and in the plant heard it. . . . . If something wasn't done right . . . we'd all hear from him.
> Q: So that was among both you and the male employees, was the pervasive harassment?
> A: Yes, sir.
> Q: That would happen every single day or–
> A: No, not every day.
> Q: How often would it happen?
> A: I couldn't tell you exactly how many days or whatever. Whenever he would just be in a bad mood.

Hunter Dep. 26:1-18. This uncontradicted evidence indicates that both male and

female employees were victims of Stouffer's alleged tirades.[20] Accordingly, we do not believe that Plaintiff has sufficiently established that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Connell, 318 Fed. Appx. at 77 (citations omitted). Therefore, we conclude that Plaintiff has failed to adduce evidence to support a hostile work environment claim. See Connell, 318 Fed. Appx. at 77-78 ("[T]he facts . . . fail to support a hostile work environment claim because both male and female . . . employees were exposed to [the employer's] ire and so, to the extent [the employer's] bad behavior can be characterized as a 'disadvantageous term or condition of employment' for workers who had to deal with it, it was a gender-neutral condition).

Furthermore, even if Plaintiff could establish that she suffered intentional discrimination because of her sex, we do not believe that she can establish that that discrimination was severe or pervasive. In analyzing this prong of the hostile work

---

[20] Plaintiff asserts that a reasonable fact finder could infer that Stouffer's conduct was motivated by Plaintiff's gender where the record does not contain evidence that males in the workplace were subjected to the same type of conduct directed toward Plaintiff. First, we believe that this misstates the standard. Plaintiff bears the burden of proving every element of her case. Accordingly, we believe that it is *Plaintiff's burden* to *prove* that male employees were not subjected to the same type of hostile environment, not Defendants' burden to prove that male employees were subjected to the same treatment. Regardless, we note that there is record evidence indicating that both male and female workers were subjected to Stouffer's allegedly hostile tirades.

environment analysis, we are to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Faragher, 524 U.S. at 787-88. With regard to these factors, we note that the allegedly harassing remarks were not physically threatening, but merely constituted offensive and distasteful utterances. Additionally, in her brief in opposition, Plaintiff characterizes Stouffer's conduct as "constant," but provides no citation to any record evidence that would corroborate this assertion. The deposition evidence that does exist, however, indicates that Plaintiff initially could not quantify the incidents of sexual discrimination and/or harassment. Later in her deposition, she stated that the aforementioned comments were made as "[a] few times," Hunter Dep. 29:2, and "two or three times," id. 30:14, during her approximately 8 month tenure at SEC. Accordingly, in light of the totality of the circumstances, we do not believe that Plaintiff has adequately proven that the harassment was severe or pervasive. See Stephenson v. City of Philadelphia, 293 Fed. Appx. 123, 124 (3d Cir 2008) ("The nine incidents span nearly two years and we agree with the district court's conclusion that, even considered together, they do not rise to the level of 'severe and pervasive' harassment.").

While Stouffer may have occasionally evinced a vesuvian temper and acted

at times as an equal opportunity lout to both male and female employees, "Title VII [and by extension the PHRA] does not represent a general civility code for the American workplace and instead provides relief only to employees who suffer severe or pervasive harassment . . . ." Brooks v. CBS Radio, Inc., 2009 WL 2492073 (3d Cir. 2009) (internal quotations omitted) (citations omitted).[21] Plaintiff has failed to establish that she was the subject of severe or pervasive harassment based upon her sex, and so we must dismiss her PHRA hostile work environment claim. We will grant the instant Motion to this extent.

Since we are dismissing Plaintiff's complaint in its entirety, we need not address the remaining arguments in support of summary judgment propounded by Defendants. An appropriate Order will enter.

---

[21] "'[S]imple teasing, offhand comments, and [non-serious] isolated incidents' do not 'amount to discriminatory changes in the terms and conditions of employment'" and are therefore insufficient in raising a genuine issue of material fact in a Title VII case. Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 280 (quoting Faragher, 524 U.S. at 788)).